IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| JIMMIE R. WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 17-06041-CV-SJ-ODS |
| | ) | |
| RONDA J. PASH, Warden, | ) | |
| Crossroads Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER AND OPINION (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING ISSUANCE OF CERTIFICATE OF APPEALABILITY, AND (3) DISMISSING MATTER WITH PREJUDICE

Pending is Petitioner Jimmie R. Williams's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. Doc. #1. For the following reasons, the Court denies the Petition, and declines to issue a Certificate of Appealability.

### I. BACKGROUND

The underlying facts were summarized by the Missouri Court of Appeals:

> Williams was originally charged with one count of first-degree statutory rape and one count of first-degree statutory sodomy. He pleaded guilty to two counts of first-degree child molestation pursuant to a plea agreement with the State. Under the agreement, Williams could ask the court to impose the minimum sentences for the offenses that run concurrently; the State could request maximum sentences to run consecutively. Williams signed a written petition to enter [a] plea of guilty. The petition included the following paragraph:
>
>> I know that the Court will not permit anyone to plead guilty who is innocent, and because I am guilty, I request the Court to accept my plea of guilty. I did the following acts in connection with the charge(s) against me; [in handwriting] In Clay County Missouri, between 8/1/2010 and 2/2/2012, I touched [the victim], her vagina to my penis and my finger to her vagina.
>
> At the plea hearing, Williams admitted that between August 1, 2010, and February 2, 2012, he knowingly subjected the victim, who was

> less than fourteen years old, to sexual contact by touching her vagina with his penis and by placing his finger inside her vagina. He acknowledged the plea agreement and stated that no threats or promises had been made to induce him to plead guilty. He further stated his understanding of the range of punishment for the class B felonies and the rights he was waiving by pleading guilty. Finally, Williams stated that his attorney had done everything he wanted and that he had no complaints with his services.
>
> At the sentencing hearing, the court received a sentence assessment report (SAR). Williams presented the testimony of his psychologist, who opined that with proper supervision and treatment, Williams's propensity to re-offend was practically zero. He also presented "many letters of support." The State presented the testimony of the victims' (sic) parents. After reception of the evidence, the court sentenced Williams to consecutive terms of eleven years imprisonment on each count. The court explained that it considered the age of the victim, the number of times she was victimized by Williams, and the SAR. It stated that although on paper Williams has a low risk of re-offending, he had changed his story and had not taken ownership of his fault.
>
> Thereafter, Williams filed an amended motion for postconviction relief. The motion alleged that the prosecutor violated *Brady v. Maryland* by failing to disclose exculpatory evidence, a DVD recording of the victim's forensic interview and an audio recording of Williams's interview by law enforcement. The motion also raised several claims of ineffective assistance of counsel both in connection with guilty plea and with sentencing. Following an evidentiary hearing, the motion court denied Williams's motion.

Doc. #6-1, at 2-4. Williams appealed the motion court's decision to the Missouri Court of Appeals, which affirmed the judgment of the motion court. *Williams v. State*, 497 S.W.3d 778 (Mo. Ct. App. 2016); Doc. #6-1.

In his Petition to this Court, Petitioner articulates the following grounds for relief:

(1) The motion court erred in denying Petitioner's Rule 24.035 motion because the State committed a *Brady* violation by failing to disclose recordings of the victim's forensic interview and Petitioner's interview by police detectives. Petitioner also argues the motion court's finding that the written summaries of these recordings accurately reflect the contents of the recordings was erroneous. Doc. #1, at 21-36.

(2) Petitioner was denied the right to effective assistance of counsel when counsel failed to investigate and obtain evidence from the State. Doc. #1, at 37-44.

2

(3) Petitioner was denied the right to effective assistance of counsel when counsel failed to correct the SAR, failed to cross-examine the victim's parents at the sentencing hearing, and failed to offer the victim's sexual assault forensic examination ("SAFE") into evidence. Doc. #1, at 44-52.

(4) As a result of the *Brady* violation and ineffective assistance of counsel, Petitioner was deemed to be not credible at sentencing, resulting in a longer sentence, and at the hearing on Petitioner's post-conviction motion, resulting in the denial of post-conviction relief, all of which deprived him of his right to fair proceedings, due process, and effective assistance of counsel. Doc. #1, at 52-56.

## II. STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which amended 28 U.S.C. § 2254, a writ of habeas corpus shall not be issued on a claim litigated on the merits in state court unless the state court's decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "contrary to" and "unreasonable application" provisions in the first subsection have independent meaning. The "contrary to" provision applies "if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or reached a decision contrary to Supreme Court precedent when confronting facts that were materially indistinguishable." *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011). The "unreasonable application" clause applies "if the state court correctly identified the governing legal principle, but unreasonably applied it to the facts of the particular case." *Id.*

Section 2254(d) "limits the applicability of the AEDPA's deferential standard to claims that have been 'adjudicated on the merits' in state court." *Worthington v. Roper*, 631 F.3d 487, 495 (8th Cir. 2011) (citation omitted). Federal courts are "directed to undertake only a limited and deferential review of underlying state court decisions." *Id.*

3

(quoting *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007)). "A federal court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* (internal quotations and citations omitted).

## III.  DISCUSSION[1]

### A. Ground One:  *Brady* violation

Petitioner argues the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to produce certain recordings. Petitioner maintains the recordings "contained exculpatory evidence as to the crimes charged and information favorable to Petitioner's plea, sentencing assessment and at sentencing." Doc. #1, at 18-19.

The Missouri Court of Appeals addressed this particular issue:

> Under *Brady v. Maryland*, 373 U.S. 83 (1963), due process is violated where the State fails to disclose evidence that is favorable to the accused and material to either guilt or punishment. *Gill v. State*, 300 S.W.3d 225, 231 (Mo. banc 2009); *State v. Salter*, 250 S.W.3d 705, 714 (Mo. banc 2008). Evidence is material only when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Salter*, 250 S.W.3d at 714. But *Brady* only applies where the defense discovers information after trial that had been known to the prosecution at trial. *Gill*, 300 S.W.3d at 231; *Salter*, 250 S.W.3d at 714. If the defendant knew about the evidence at the time of trial, no *Brady* violation occurred. *Id.* When an alleged *Brady* violation is raised in a 24.035 motion, the "violation must be such that it supports a conclusion that the movant would not have pled guilty had he been provided with the undisclosed evidence." *Wallar v. State*, 403 S.W.3d 698, 707 (Mo. App. W.D. 2013).

Doc. #6-1, at 5. The Missouri Court of Appeals found Petitioner was aware of the recordings before his guilty plea in March 2013. *Id.* After Petitioner requested discovery, the State provided Petitioner's counsel "with a summary of the victim's forensic interview and a summary of Williams's interview with police detectives." *Id.* The summaries indicated the victim's interview was videotaped, and Petitioner's interview was recorded. *Id.* at 5-6. During an evidentiary hearing, Petitioner's counsel

---

[1] The Court concludes a hearing is not necessary because Petitioner's claims can be evaluated based on the record.

acknowledged he was aware his client's interview had been recorded but he did not follow up to see if either recording was available. *Id.* at 6. The Missouri Court of Appeals concluded Petitioner's counsel had knowledge of the records before Petitioner pled; thus, "there was no *Brady* violation." *Id.* The Missouri Court of Appeals also found Petitioner "failed to prove that he would not have pleaded guilty but for the nondisclosure." *Id.*

As set forth above, this Court cannot issue a writ of habeas corpus unless it determines the state court's decision (1) was contrary to or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence in the state court proceeding. 28 U.S.C. § 2254(d). For the following reasons, this Court finds the Missouri Court of Appeals's determination that there was no *Brady* violation was not contrary to, or involved an unreasonable application of, clearly established federal law.

"In *Brady*, the Supreme Court held that 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Villasana v. Wilhoit*, 368 F.3d 976, 978 (8th Cir. 2004) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). When "the existence of the allegedly suppressed evidence bec[omes] known to the defense," there is no *Brady* violation. *Id.* at 979 (citations omitted). Petitioner's counsel was aware of the recordings' existence. For this reason alone, there was no *Brady* violation.

In addition, Petitioner failed to establish the recordings were favorable to him, a requirement to establish a *Brady* violation. *Brady*, 373 U.S. at 87. The recording of the victim's interview reveals Petitioner molested the victim, who at the time of the interview, was five-years-old, and the molestation occurred numerous times. Doc. #20, at Ex. 23. The molestation included, among other things, genital contact and digital penetration. *Id.* This recording is not favorable to Petitioner, and Petitioner failed to demonstrate otherwise. For this additional reason, there was no *Brady* violation.

Furthermore, Petitioner did not show the suppression of the recordings prejudiced him during his guilty plea or sentencing, also a requirement to establish a *Brady* violation. *Brady*, 373 U.S. at 87 (stating the suppressed evidence must be

5

"material either to guilt or punishment"). Petitioner argues he would not have pled guilty to child molestation had he viewed the recordings, and would have known the victim, according to Petitioner's interpretation of the recording, did not allege vaginal penetration. This argument is without merit for two reasons. First and foremost, during his guilty plea, Petitioner, under oath, admitted he digitally penetrated the victim's vagina. Doc. #9-4, at 12-13. Whether the victim stated the penetration was vaginal or anal is immaterial. Second, Petitioner pled guilty to child molestation, which does not require proof of penetration. Mo. Rev. Stat. § 566.067(2) (2014). Thus, allegedly disputed facts about whether penetration occurred and the type of penetration that occurred are inconsequential. For this additional reason, there was no *Brady* violation.

Petitioner also argues the Missouri Court of Appeals improperly determined the written summaries of the recordings accurately depicted the recordings. Specifically, he contends the written summary of the victim's interview misrepresented the victim's statement, particularly with regard to penetration. *See* Doc. #20, at 1, 7-11. During the recording of the victim's interview, the victim unequivocally stated Petitioner digitally penetrated her. *See* Doc. #20, at Ex. 22. The victim, using her descriptions of her body parts ("bottom" for vagina, and "butt" for posterior), stated Petitioner digitally penetrated her "butt," and also stated Petitioner digitally penetrated her "bottom." *Id.* The Court finds the Missouri Court of Appeals's holding that the summary of this recording accurately reflected the victim's statements was not an unreasonable determination of the facts. Accordingly, Ground One is denied.

### B. Grounds Two and Three: Ineffective Assistance of Counsel

Issues of ineffectiveness of trial counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified

6

acts or omissions were outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. *Id.* at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lawrence*, 961 F.2d at 115 (quoting *Strickland*, 466 U.S. at 694).

*Id.* Failure to satisfy both prongs is fatal to the claim. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (stating there is no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); *see also DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). "An ineffective assistance of counsel claim is a mixed question of law and fact." *McReynolds v. Kemna*, 208 F.3d 721, 723 (8th Cir. 2000).

### (1) Failure to Investigate and Obtain Evidence

In Ground Two, Petitioner argues his counsel was ineffective for failing to follow up with the State to determine whether the DVD of the victim's interview was available, obtain the DVD, and determine whether the audio recording of Petitioner's interview was still available. Petitioner contends these failures resulted "in prejudice…in that his plea was based upon the State's materially misrepresented evidence, and he was assessed against such purported evidence, resulting in lengthy and consecutive sentences…." Doc. #1, at 37. The Missouri Court of Appeals found this particular issue had not been raised before the motion court, and therefore, Petitioner did not preserve this particular argument for appeal. *Id.* at 9. The Missouri Court of Appeals, however, still considered the claim but found it meritless. *Id.*

> By entering a plea of guilty, a movant generally waives any future complaints about counsel's failure to investigate and prepare for trial. *Smith v. State*, 413 S.W.3d 709, 716 (Mo. App. E.D. 2013). Such claims are only relevant in regard to the voluntariness of the guilty plea. *Id.* To succeed on a claim of ineffective assistance of counsel claim based on inadequate investigation, "movant must specifically describe the information the attorney failed to discover, allege that a reasonable investigation would have resulted in the discovery of such information and prove that the information would have aided or improved movant's position." *Id.* (internal quotes and citation omitted).

7

> Williams failed to prove that obtaining and reviewing the recordings would have aided or improved his position. At the evidentiary hearing, Williams introduced into evidence the recordings of his interview and the victim's forensic interview. He did not, however, allege or prove what specific information his counsel could have discovered in the recordings that was substantially different from the summaries of the recordings or that would have aided or improved his defense. It was not the responsibility of the motion court to compare the recordings to the summaries that had been provided to the defense and determine whether anything might have been helpful to Williams's defense. "It is the movant's responsibility to prove that a more extensive investigation would have produced evidence to improve movant's trial position." *Yoakum v. State*, 849 S.W.2d 685, 688 (Mo. App. W.D. 1993). No basis existed for the motion court to conclude that further investigation into the recordings would have resulted in Williams choosing to proceed to trial instead of pleading guilty. Williams failed to prove this claim for postconviction relief by a preponderance of the evidence.
>
> Nevertheless, review of the recordings shows that the summaries that had been provided to the defense accurately reflected the victim's and Williams's statements in their interviews and did not misstate anything in the recordings. While the summary of Williams's interview did not include some denials made by him, he failed to prove that the denials would have improved his position. In his interview, Williams admitted certain conduct and at other times denied it. He fails to show how his inconsistent statements during his interview with detectives would have improved his position or caused him to go to trial rather than plead guilty. The motion court did not clearly err in denying this claim of ineffective assistance of counsel.

Doc. #6-1, at 10-11.

This Court must determine whether the decision of the Missouri Court of Appeals is either contrary to or involved an unreasonable application of clearly established law, or was based on an unreasonable determination of fact. 28 U.S.C. § 2254(d). Based upon its review of the record and the applicable law, the Court concludes the Missouri Court of Appeals applied the proper standard in that it analyzed (1) whether trial counsel's performance was deficient, and (2) whether this deficiency prejudiced Petitioner. Petitioner failed to establish his counsel's failure to obtain the recordings was outside the wide range of professionally competent assistance. *Strickland*, 466 U.S. at 690. Petitioner also failed to show there was a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Court also finds the Missouri

8

Court of Appeal's decision was not based upon an unreasonable determination of the facts. For these reasons, Ground Two denied.

### (2) Failure to Correct SAR

For his first argument under Ground Three, Petitioner alleges his counsel was ineffective at sentencing because he failed to correct the SAR. Petitioner maintains his counsel's failures resulted in "much longer sentences and the imposition of consecutive sentences…." Doc. #1, at 45.

At the sentencing hearing, the court received an SAR completed by a probation and parole officer. Doc. #6-1, at 18. The court asked if either party had corrections to the SAR, and neither did. *Id*. Among other things, the SAR "revealed the facts surrounding the victim's disclosure to her parents of the molestation by Williams, her step-grandfather who babysat her two afternoons a week." *Id*. The SAR also detailed the victim's forensic interview and Williams's interview with police. *Id*. at 19. The SAR indicated the victim would come to Williams naked while Williams's wife was not home, and this "occurred about every week and a half and estimated 24 to 36 incidents." *Id*.

According to the SAR, Petitioner "said the victim got into the habit of taking her clothes off in front of him and that at times she would come to him with lotion on her vagina that he would wipe off and rub in on her body. Williams said that 'one time, couple of times, 4-5-6 times' the victim asked him to touch her 'bottom' meaning vagina." *Id*. On hot days, Petitioner would undress the victim, while he thought she was napping, because she was sweaty. *Id*. He reported the victim would come to his room naked and give him a "bear hug." *Id*. "Williams admitted rubbing the outside of the victim's vagina eight or nine times from April 2011 to November 2011 but denied digital or penile penetration." *Id*. According to the SAR officer, "Williams continuously blamed the victim, minimized the offenses, and never took responsibility for his actions." *Id*.

At the evidentiary hearing on Petitioner's post-conviction motion, his counsel testified he and Petitioner had a "long conversation" about the SAR. *Id*. at 19. Counsel indicated the SAR "did not come out as favorable as we both hoped" and "Williams was frustrated he did poorly on it. *Id*. Petitioner believed the SAR "overinflated the number of times he had contact with the child," and he was concerned that some statements

9

were "misleading." *Id.* Petitioner claims he asked his counsel to correct the SAR but his counsel did nothing. *Id.* at 20.

The Missouri Court of Appeals decided this claim on the merits even though Petitioner failed to comply with state procedural rules during the post-conviction proceedings. *Id.* at 7-8. The Missouri Court of Appeals denied the claim, finding Petitioner "failed to prove what changes should have been made to the SAR." *Id.* at 20.

> [Williams] presented no evidence at the evidentiary hearing as to what in the SAR was inaccurate or how it should be clarified with the exception of his testimony about "the 24 to 36 statement." Under "Offender's Version" of the SAR, the following was set out:
>
>> Williams said his wife was not home when [the victim] would come to him naked. He said it occurred about every week and a half. Williams estimated 24 to 36 incidents.
>
> This statement was taken from the probable cause statement and is consistent with the recording of Williams's interview with detectives. It referred to the number of times the victim was naked. It did not reflect how many times Williams molested the victim. The information in the SAR regarding this statement was accurate as to what he reported to detectives.
>
> In his motion for postconviction relief and in his appellate brief, Williams set out additional, specific clarifications and corrections that he believes counsel could have made to the SAR if counsel had had the recordings of his and the victim's interviews. However, evidence of these alleged clarifications or corrections was not presented at the evidentiary hearing. Besides "the 24 to 36 statement," Williams did not identify any other alleged misleading statements in the SAR or explain how he wanted such statements corrected. Allegations in a motion for postconviction relief are not self-proving. *Bustamante v. State*, 478 S.W.3d 431, 440 (Mo. App. W.D. 2015). It is well-settled that a movant's failure to present evidence at the hearing to provide factual support for a claim in his postconviction motion constitutes an abandonment of that claim. *Id.* A motion court does not clearly err in refusing to grant relief on an issue that is not supported by evidence at the evidentiary hearing. *Id.*
>
> Finally, Williams failed to prove that he would have received a more lenient sentence but for counsel failing to make changes to the report. In denying this claim, the motion court explained that while it considered the number of incidents, it also considered the victim's age, Williams's failure to take responsibility, and his changing his story between the plea and sentencing. It found that even if the defense had attempted at sentencing to minimize Williams's conduct with corrections to the SAR, it would not have resulted in a more lenient sentence. Where, as here, the sentencing

court and motion court were one in the same, this finding by the motion court that proposed testimony at sentencing would not have ameliorated the sentence is virtually unchallengeable under the clearly erroneous standard of review. *See Cherco v. State*, 309 S.W.3d 819, 831 (Mo. App. W.D. 2010) (motion court's finding that character witnesses would not have ameliorated the sentence was virtually unchallengeable). The motion court did not clearly err in denying this claim.

*Id.* at 19-21.

Before this Court, Petitioner suggests the SAR conflicted with the recorded statements, his statements to the SAR officer should have been compared the recordings and not the probable cause statement, and ambiguous statements were contained in the SAR. Doc. #20, at 33-37. When Petitioner raised this issue in the state court, Petitioner failed to specify clarifications and corrections that should have made to the SAR, other than a statement about the number of times he molested the child. Thus, Petitioner's claim is limited to that one alleged inaccuracy in the SAR.

Petitioner has not demonstrated his attorney's failure to correct this portion of the SAR was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Further, assuming Petitioner could establish his attorney's performance was so deficient as to fall below an objective standard of reasonable competence, Petitioner failed to establish his counsel's allegedly deficient performance prejudiced him. Petitioner contends he was sentenced more harshly because the sentencing court relied upon the SAR. Doc. #20, at 34. But Petitioner fails to prove he would have received a more lenient sentence without the Court's reliance on the SAR.

In reality, the motion court considered not only the number of alleged incidents, but also considered the victim's age, Petitioner's failure to take responsibility and own what he did, a concern that Petitioner could re-offend, and Petitioner's story changing between the plea and sentencing. Doc. #6-1, at 21; Doc. #9-4, at 44-45. Petitioner was sentenced to eleven years on both counts of child molestation, to run consecutively. Doc. #1, at 1; Doc. #9-4, at 44. The applicable range of punishment for child molestation was five to fifteen years imprisonment, as explained to Petitioner at the time he pled guilty. Doc. #9-4, at 11. The sentences for both counts were within the range of punishment. Additionally, the state court ordered the sentences to be served consecutively, a possibility explained to Petitioner at the time of his guilty plea. *Id.*, at

11

13. Petitioner failed to present evidence establishing his sentences would have been less, or would not have run consecutively, had the SAR been corrected.

Based upon its review of the record before it and the applicable law, the Court finds the decision of the Missouri Court of Appeals was not contrary to or involved an unreasonable application of clearly established law, and was based on an unreasonable determination of fact. 28 U.S.C. § 2254(d). The Court also concludes the Missouri Court of Appeals applied the proper standard when it analyzed whether trial counsel's performance was deficient, and whether the deficiency prejudiced Petitioner. For these reasons, this argument under Ground Three is denied.

### (3) Failure to Cross-Examine Victim's Parents

For his second argument under Ground Three, Petitioner contends his counsel was ineffective by failing to cross-examine the victim's parents during the sentencing hearing. He claims the victim's parents' testimonies conflicted with prior statements, and cross-examination of the parents would have revealed they exaggerated the claims concerning their daughter.

The Missouri Court of Appeals also considered this claim. It noted "[r]easonable choices of trial strategy, no matter how ill-fated in hindsight, cannot serves as a basis for an ineffective assistance of counsel claim." Doc. #6-1, at 22 (citing *Tucker v. State*, 468 S.W.3d 468, 474 (Mo. Ct. App. 2015)). "The decision whether to impeach a witness is presumed to be a matter of trial strategy, and to overcome such presumption, the movant must demonstrate that the decision was not a matter of trial strategy and that the impeachment would have provided him with a defense or would have changed the outcome of the trial." *Id.* (citation omitted).

The Missouri Court of Appeals noted Petitioner did not question counsel during the evidentiary hearing about counsel's failure to cross-examine the victim's parents. *Id.* at 23. And Petitioner did not present evidence showing the cross-examination of the victim's parents would have impacted his sentence. *Id.* "Without further evidence on this issue, Williams failed to overcome the presumption that failure to cross-examine the victim's parents was a strategic choice by competent counsel." *Id.* (citation omitted). For these reasons, the Missouri Court of Appeals denied this claim for relief.

Petitioner failed to establish his attorney's performance – in choosing not to cross-examine the victim's parents, one of whom was Petitioner's step-daughter – was so deficient as to fall below an objective standard of reasonable competence. Counsel's decision not to cross-examine and impeach the victim's parents is a matter of trial strategy, and is left to the professional discretion of counsel. *See United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011); *Johnson v. United States*, 278 F.3d 839, 842 (8th Cir. 2002) (citations omitted). There are few exceptions to this presumption, which are inapplicable here. *Orr*, 636 F.3d at 952 (stating the Eighth Circuit has found constitutionally deficient performance when counsel "allowed inadmissible devastating evidence before the jury or when counsel failed to cross-examine a witness who made grossly inconsistent prior statements.") (citation omitted). Even if Petitioner could establish his counsel was deficient, he failed to establish his counsel's allegedly deficient performance prejudiced him. *See supra*, section III(B)(1)-(2).

Upon consideration of the record and the relevant law, the Court finds the decision of the Missouri Court of Appeals was not contrary to or involved an unreasonable application of clearly established law, and was based on an unreasonable determination of fact. 28 U.S.C. § 2254(d). The Court also determines the Missouri Court of Appeals applied the proper standard when it analyzed whether trial counsel's performance was deficient, and whether the deficiency prejudiced Petitioner. Accordingly, this argument under Ground Three is denied.

### (4) Failure to Offer SAFE Report Into Evidence

In his final argument under Ground Three, Petitioner alleges his counsel was ineffective by failing to offer the SAFE report into evidence at the sentencing hearing because the SAFE report showed the victim did not suffer physical trauma. The Missouri Court of Appeals also considered and denied this argument.

> Williams again argues that the SAFE exam results would have provided substantial evidence that he did not have sexual intercourse with the victim or penetrated her vagina with his finger. But Williams did not plead guilty to statutory rape and statutory sodomy; he pleaded guilty to two counts of first-degree child molestation. Penetration is not an element of child molestation in the first degree. *Pond*, 131 S.W.3d at 794. Instead, first-degree child molestation requires a finding of sexual contact, which is any touching of another person with the genitals or any touching of the

> genitals or anus of another person for the purpose of arousing or gratifying sexual desire of any person. §§ 566.067.1 and 566.010(3). As explained above, the SAFE exam did not rule out child molestation. Williams failed to show a reasonable probability that the SAFE exam would have resulted in a lesser sentence. The motion court did not clearly err in denying this claim.

Doc. #6-1, at 17-18.

Petitioner failed to demonstrate his attorney's failure to offer the SAFE report into evidence at the sentencing hearing was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Further, assuming Petitioner could establish his attorney's performance was so deficient as to fall below an objective standard of reasonable competence, Petitioner failed to establish his counsel's allegedly deficient performance prejudiced him. *See supra*, section III(B)(1)-(3).

Based upon its review of the record and the applicable law, the Court finds the Missouri Court of Appeals's decision was not contrary to or involved an unreasonable application of clearly established law, and was based on an unreasonable determination of fact. 28 U.S.C. § 2254(d). The Court also concludes the Missouri Court of Appeals applied the proper standard when it analyzed whether trial counsel's performance was deficient, and whether the deficiency prejudiced Petitioner. Thus, this argument under Ground Three is denied.

### C. Ground Four: Deprivation of Right to Fair Proceedings and Due Process Resulting from *Brady* Violation and Ineffective Assistance of Counsel

Petitioner alleges that as a result of the alleged *Brady* violation and ineffective assistance of counsel, Petitioner was deemed not credible at sentencing, which resulted in longer and consecutive sentences, and was deemed not credible at the motion hearing, resulting in the denial of post-conviction relief. Petitioner argues he was deprived of his right to fair proceedings, due process, and effective assistance of counsel.

Respondent argues this ground must be dismissed because Petitioner failed to properly exhaust his state remedies with regard to this claim. Before presenting a federal habeas claim, a petitioner must properly exhaust his state remedies. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999). "[T]he state prisoner must

14

give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *Id.* In his Traverse, Petitioner did not discuss Ground Four or set forth any argument as to why Ground Four has not been defaulted. *See* Doc. #20. Upon review of the record, the Court finds Ground Four is procedurally barred because Petitioner did not exhaust this particular claim in the state court proceedings. For this reason alone, Ground Four is denied.

Even if Petitioner exhausted this claim, it would fail on the merits. This claim rests on Petitioner's *Brady* violation claim and his ineffective assistance of counsel claims. As set forth above, those claims fail. Thus, this claim fails as well.

## IV. CERTIFICATE OF APPEALABILITY

The Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

## V. CONCLUSION

For these reasons, Petitioner's request for habeas corpus relief pursuant to 28 U.S.C. § 2254 is denied, the issuance of a certificate of appealability is denied, and this matter is dismissed with prejudice.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: August 22, 2017  UNITED STATES DISTRICT COURT